The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for modifications that do not change the ultimate award.
***********
By motion filed June 30, 2000, plaintiff requested an additional evidentiary hearing for the taking of additional evidence regarding plaintiffs medical condition and possible treatment. Plaintiffs motion must be, and hereby is, DENIED. If issues remain subsequent to this Full Commission Opinion and Award, plaintiff may file a medical motion and request for an informal hearing with the Executive Secretarys office or a Form 33 request for hearing.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The carrier on the risk on January 24, 1997 was TIG Insurance (Sedgwick of the Carolinas, Inc.)
2. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers Compensation Act. An employer-employee relationship existed between employer-defendant and plaintiff on January 24, 1997.
3. Plaintiffs average weekly wage at the time of the injury was $289.60 per week, yielding a compensation rate of $193.07.
4. Plaintiff suffered an injury by accident arising out of and in the course of his employment on January 24, 1997.
5. The parties stipulated that the issues for determination before the Deputy Commissioner were: i) whether plaintiff is entitled to receive temporary partial disability benefits from February 4, 1998 through February 18, 1998, ii) whether plaintiff is entitled to receive temporary total benefits from February 19, 1998 and continuing, iii) whether plaintiff is entitled to reimbursement for mileage related to medical treatment and prescription medication, iv) whether plaintiff sustained compensable permanent partial disability to his back in excess of fifteen percent, and v) whether plaintiff has reached maximum medical improvement.
6. In addition, the parties stipulated into evidence the following documents: i) Medical records and reports marked as Defendants Exhibit 1, ii) Prescription receipts marked as Defendants Exhibit 2, iii) Statement from Burlington Anesthesia marked as Plaintiffs Exhibit 2, iv) Note for physical therapy dated September 25, 1998 marked as Plaintiffs Exhibit 1.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was 45 years old at the time of the hearing before the Deputy Commissioner and has a ninth grade education. Plaintiff was employed by defendant-employer and its predecessor as a dye tub operator. His job duties included weighing dye and chemicals to pour into a tank, placing greige goods into the dye tub, programming and operating the machine, removing the dyed hosiery, and then pushing the dyed hosiery in a buggy to a specified area. Approximately once a month he also had to move drums containing chemicals from a loading dock to a staging area. The drums weighed 125 to 500 pounds and plaintiff would use a pallet jack or a drum jack to transport them.
2. On January 24, 1997 plaintiff sustained a compensable injury when he pulled a drum with a hand truck over a raised area in the floor and experienced the onset of low back pain. Plaintiff was initially treated at the Emergency Room but was then referred to the Kernodle Clinic where he was treated by Dr. Douglas W. Peeds physicians assistant. On January 28, 1997 plaintiff complained of low back pain radiating down his left leg along with neck pain and stiffness. He was treated with medication, physical therapy, and given work restrictions. In March 1997 an MRI of his lumbar spine was ordered and it revealed a moderate disc extrusion at L5-S1, lateralizing slightly to the right.
3. Dr. Peed examined plaintiff on March 25, 1997. Plaintiff was complaining of pain in both legs at that time. Even though it appeared to the doctor that there were some secondary gain issues, Dr. Peed referred plaintiff to Dr. James C. Califf, an orthopedic surgeon at the clinic, for another opinion. Plaintiff then saw Dr. Califf on April 11, 1997. Dr. Califf was of the impression that plaintiff was experiencing symptoms from a herniated disc at L5-S1 and recommended surgery. On April 25, 1997 Dr. Califf performed the surgery to decompress plaintiffs L5-S1 interspace.
4. Following the operation, plaintiff complained of worse pain than before the surgery. Dr. Califf sent him to physical therapy and plaintiff complained that the therapy aggravated his symptoms. Consequently, plaintiff was given anti-inflammatory medication and a short period of time without therapy. Plaintiff continued to complain of persistent right leg pain, but the doctor noted that plaintiff was ambulating fairly well. By the time of the July 8, 1997 appointment, Dr. Califf had conferred with the physical therapist and concluded that plaintiff was presenting with a number of non-physiological complaints. Plaintiff had several unusual and atypical symptoms plus multiple positive Waddell signs on examination that indicated symptom magnification. Dr. Califf ordered additional physical therapy, released plaintiff to return to work at light duty, and sent him for a functional capacity evaluation.
5. Plaintiff underwent the functional capacity evaluation on August 19, 1997. Although he believed that plaintiff was still experiencing some pain and dysfunction, the physical therapist was of the impression that plaintiff put forth sub maximal effort and exaggerated his pain complaints. Dr. Califf then saw plaintiff on October 2, 1997 and advised that plaintiff had reached maximum medical improvement. Plaintiff was released and returned to work with restrictions of lifting 20 to 50 pounds occasionally, 10 to 20 pounds frequently, carrying 10 to 50 pounds occasionally and up to 10 pounds frequently, no twisting or crawling, and limited bending.
6. On referral of his attorney, plaintiff then went to Dr. Paul B. Suh, another orthopaedic surgeon, for a second opinion, but plaintiffs medical records were not provided to Dr. Suh. Dr. Suh examined plaintiff on November 3, 1997. On examination plaintiff had no evidence of nerve root irritation, but, because of his subjective complaints of pain, Dr. Suh concluded that plaintiff had not reached maximum medical improvement and should have additional diagnostic tests, including a mylegram/CT scan, a discogram, a discogram/CT and an evaluation by a pain and stress management specialist. Defendants did not authorize the testing recommended.
7. Plaintiff returned to work in a light-duty capacity for defendant-employer on approximately February 4, 1998. The job plaintiff was given was greige identification clerk, a position that involved numbering boxes of hosiery, taking two pairs of hose out of each box, identifying the style, size and number of pairs of hose inside the box, and writing that information on the box, on one of the pairs of hose, and on a separate paper. The boxes were then stacked in a designated place. They varied in weight from 3 to 45 pounds and were stacked three to four high. If stacked four high, the boxes would be higher than plaintiffs head.
8. The clerk position involved more lifting than allowed by Dr. Califf. It also involved significant bending, and plaintiff developed increased pain over the period that he performed the work. On approximately February 18, 1998 plaintiff left the job site and advised his employer that he would return when lighter work was provided. He thereafter made no effort to find suitable work on his own, and defendant-employer did not offer him a position with lighter duties.
9. Plaintiff did not receive authorized medical treatment from November 1997 until the date of the hearing before the Deputy Commissioner because Dr. Califf had released him and defendants would not authorize the tests recommended by Dr. Suh. Following the hearing, the Deputy Commissioner instructed defendants to arrange for an MRI. The scan was performed and the report provided to Dr. Califf.
10. Dr. Suh did not review the actual MRI images by the time of his deposition, but, based upon the radiologists report, concluded that there was no active nerve root compression, so he could not explain plaintiffs continuing complaints of leg pain. He continued to recommend a discogram based upon plaintiffs complaints, but Dr. Suh had still not seen the previous medical reports at the time his deposition was taken.
11. Defendants admitted liability for benefits under the Workers Compensation Act for plaintiffs January 24, 1997 injury pursuant to a Form 60 that was filed with the Commission December 17, 1997. Defendants paid compensation to plaintiff for temporary total disability until he returned to work in February 1998. Due to his physical restrictions, plaintiff was unable to remain employed and stopped working in February 1998, approximately two weeks after starting. Defendants did not resume payment of compensation when plaintiff could not work.
12. As a result of his compensable injury at work, plaintiff was unable to work in any capacity from April 1, 1997 through June 10, 1997, when he was first released to return to light duty work. However, he remained unable to perform his regular job duties through October 2, 1997 and defendants did not offer him suitable work during that time, which was within the healing period.
13. Plaintiff reached maximum medical improvement on October 2, 1997 and sustained a 15% permanent partial disability to his back as a result of his injury at work.
14. Based on evidence of symptom magnification and inadequate cooperation with a functional capacity examination, the Deputy Commissioner found plaintiffs allegation that has been and continues to be totally disabled from working in any capacity not credible. The Full Commission declines to reverse the credibility determination of the Deputy Commissioner in this case.
15. Plaintiff has been rendered partially disabled to the extent that he has been unable to perform his former job duties with defendant-employer and unable to perform the alternative job provided by the company due to his injury. Defendant-employer has not offered suitable work to plaintiff and has not provided evidence of other suitable jobs that were available and that plaintiff could have obtained.
16. Because compensation for actual wage loss will provide plaintiff with greater recovery than compensation for the permanent partial impairment rating, it is presumed that plaintiff would choose the more munificent remedy.
17. Defendants were slow to authorize and pay medical treatment expenses arising from this injury. Plaintiff incurred $79.54 in prescription costs in 1997 that still had not been paid as of the date of hearing before the Deputy Commissioner, even though defendants acknowledged responsibility for them. In addition, a bill from Burlington Anesthesia arising from the surgery remained unpaid. By the date of the initial hearing, both bills had been submitted to defendants for payment.
18. Plaintiff currently has no authorized treating physician and, given the 15% permanent partial disability to his back and his permanent work restrictions, will continue to require medical treatment.
***********
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff was entitled to compensation for temporary total disability at the rate of $193.07 per week from April 1, 1997 through October 2, 1997, when he reached maximum medical improvement. Defendants have paid this compensation pursuant to a Form 60. N.C. Gen. Stat. 97-29.
2. The Form 60 filed with the Commission December 17, 1997 and defendants subsequent payment of workers compensation benefits constitute an Award of the Commission with respect to compensability and liability for the injury by accident. Calhoun v. Wayne Dennis Heating Air Cond.,129 N.C. App. 794, 501 S.E.2d 346 (1998). Therefore, plaintiff is entitled to a rebuttable presumption of continuing disability. Smith v.Sealed Air Corp., 127 N.C. App. 359, 489 S.E.2d 445 (1997); Kisiah v.W.R. Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996).
3. Plaintiff has been physically unable to perform work provided to him by defendants subsequent to the injury. Plaintiffs refusal of the work offered him by defendant-employer was justified in that the proffered job was not suitable. N.C. Gen. Stat. 97-32.
4. Plaintiff is entitled to compensation for partial disability at the rate of two-thirds of the difference between his former average weekly wage of $289.60 and the weekly wages he was able to earn from October 3, 1997 and continuing thereafter for as long as he remains so disabled, subject to the 300-week statutory limitation. He shall receive his full compensation rate during the weeks he was not employed. However, defendants are entitled to a deduction for compensation previously paid during the time in question. N.C. Gen. Stat. 97-30; N.C. Gen. Stat. 97-42.
5. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident, including prescription expenses in the amount of $79.54 and anesthesia expenses from Burlington Anesthesia, which have been approved in the amount of $574.00. N.C. Gen. Stat. 97-25; N.C. Gen. Stat. 97-26.
6. Because defendants had received both medical bills by January 13, 1999 and because the carrier was responsible for direct reimbursement pursuant to N.C. Gen. Stat 97-26(g), if the bills were not paid within sixty days of the date of the hearing before the Deputy Commissioner, the carrier shall pay an additional ten percent penalty for late payment. N.C. Gen. Stat. 97-18 (i).
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for partial disability at the rate of two-thirds of the difference between his former average weekly wage of $289.60 and the weekly wages he was able to earn from October 3, 1997 and continuing thereafter for as long as he remains so disabled, subject to the 300-week statutory limitation. He shall receive his full compensation rate during the weeks he was not employed. This compensation is subject to a deduction for the compensation previously paid by defendants, to the attorneys fee hereinafter approved, and to the 300-week statutory limitation. To the extent it has accrued, this compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including prescription expenses in the amount of $79.54 to plaintiff and the sum of $574.00 to Burlington Anesthesia. In addition, if these were not paid within sixty days of the date of hearing before the Deputy Commissioner, defendants shall pay an additional ten-percent as a penalty for late payment.
3. A reasonable attorneys fee in the amount of twenty-five percent of the net compensation due plaintiff is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiffs counsel.
4. This case is referred to the Commission nurses section for the assignment of a nurse to consult with the parties and to assist them in the selection of a treating physician for plaintiff. The Commission nurse shall provide all of plaintiffs prior medical records to that physician.
5. Defendants shall pay the costs of this appeal.
This the _____ day of September, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING IN RESULT ONLY:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER